IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROGER LEE HOOTON             §
TDCJ No. 2173989,            §
                             §
            Petitioner,      §
                             §
V.                           §            No. 3:20-cv-487-K-BN
                             §
DIRECTOR, TDCJ-CID,          §
                             §
            Respondent.      §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Roger Lee Hooton is a Texas prisoner convicted, after entering an open guilty plea, of Injury To A Child with Serious Bodily Injury and sentenced to life in prison. *See State v. Hooton*, No. F-1675058-P (203rd Jud. Dist. Court. Dallas Cnty., Tex., Dec. 13, 2017); Dkt. No. 21-1 at 4. His conviction was confirmed on direct appeal as modified to indicate that he plead true to two enhancement paragraphs that the trial court found to be true. *See Hooton v. State*, No. 05-18-00012-CR (Tex. App. Dallas. 2018 – pet ref'd); Dkt. No. 18-3 at 1. Hooton filed a petition for discretionary review (PDR), which the Texas Court of Criminal Appeals ("TCCA") refused. Dkt. No. 18-12 at 1.

Hooton then filed a state writ of habeas corpus. *See Ex parte Hooton*, WR16-75058-P(A) (Tex. Crim. App. Jan. 28, 2020). While his state habeas application was pending, Hooton filed this federal habeas application. Dkt. No. 3. The Court referred this action to the undersigned United States magistrate judge for pretrial

management under 28 U.S.C. § 636(b) pursuant to a standing order of reference from United States District Judge Ed Kinkeade.

The Court dismissed Hooton's original federal application without prejudice to his ability to present it again after exhausting his state remedies. Dkt. No. 10. The TCCA subsequently denied Hooton's application without written order on the findings of the habeas trial court without hearing and on the Court's independent review of the record. *Ex parte Hooton*, WR-91,874-01 (Tex. Crim. App. Mar. 10, 2021); *see also* Dkt. No. 18-17 at 1.

Hooton then filed an amended federal habeas petition (Dkt. No. 12), and the Court re-opened the case. Dkt. No. 13. The State responded to Hooton's amended application; and Hooton filed a reply. Dkt. Nos. 23, 24. The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Hooton's application for a writ of habeas corpus.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court

adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies

on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ...

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on [an] unreasonable factual determination...In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review

[that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Hooton makes the following claims for habeas relief: (1) his appellate counsel was ineffective for failing to raise a sufficiency-of-the-evidence claim; (2) his trial counsel was ineffective for failing to advise him to withdraw his guilty plea; (3) his trial counsel was ineffective for failing to request a directed verdict after the State's proffer of evidence after he entered an open guilty plea; (4) his guilty plea was involuntary because he was not informed of an available affirmative defense; (5) his guilty plea was involuntary and a violation of Due Process because the State failed to present proof of an essential element of the indicted charge; (6) the trial court judge was biased against him; (7) his trial counsel was ineffective for failing to file a recusal

motion; and (8) the cumulative errors of his trial counsel amounted to ineffective assistance of counsel. *See* Dkt. No. 21 at 2.

## A. Ineffective Assistance of Counsel ("IAC")

Hooton makes various IAC claims. The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that

it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance

through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was

### *(i)    Ineffective Assistance of Appellate Counsel*

In his first ground for relief, Hooton claims that his appellate counsel was ineffective for not raising a sufficiency-of-the-evidence claim on direct appeal, specifically, that the State did not establish the serious-bodily-injury element of the charge. Dkt. No. 12 at 6; *see also* TEX. PENAL CODE § 22.04 (describing elements of the "Injury to Child, Elderly Individual, or Disabled Individual" crime).

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). Counsel has a professional duty to choose among potential issues, according to his or her judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *See Jones*, 463 U.S. at 752. Thus, to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal was objectively unreasonable. *See United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (citing *Strickland*, 466 U.S. at 687). And prejudice in this context

---

'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

requires the petitioner to show a reasonable probability that he would have prevailed on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

The TCCA adopted the habeas trial court's finding that this claim would not have succeeded on direct appeal because there was sufficient evidence to support the conviction, namely, Hooton's guilty plea, judicial confession, and testimony under oath that he committed the offense as charged in the indictment. *See* Dkt. No. 21-1 at 15.

The TCCA's rejection of this IAC claim was not an unreasonable application of *Strickland*. First, constitutionally speaking, "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). As discussed more below, the TCCA's ultimate finding that Hooton's guilty plea passes constitutional muster is not unreasonable. So, from a constitutional perspective, there was no basis to challenge the sufficiency of the evidence.

And second, as a matter of Texas law, while Article 1.15 of the Texas Code of Criminal Procedure requires substantiation of a guilty plea, that is, "evidence in addition to, and independent of, the plea itself to establish the defendant's guilty," a stipulation of guilt and judicial confession are sufficient to meet that requirement. *See Keller v. State*, 125 S.W.3d 600, 605 (Tex. App. – Houston 2003, pet. dism'd). Hooton signed a judicial confession and other guilty-plea paperwork, which is sufficient to satisfy Article 1.15. *See* Dkt. No. 21-1 at 8-13.

This all means that there was sufficient evidence to support the conviction, and an argument that there was not would have been frivolous, or, at least, without merit.

Hooton's appellate counsel's failure to raise this issue on appeal was not unreasonable because appellate counsel is not required to make meritless arguments on appeal. *See*, *e.g.*, *Flores v. Johnson*, 957 F.Supp. 893, 924, n. 124 (W.D. Tex. 1997) ("Appellate counsel are not required to present patently frivolous arguments on appeal, or even to present all non-frivolous points that could have been raised.") (collecting cases). And, relatedly, Hooton has not shown prejudice because he has not shown a reasonable probability that he would have prevailed on appeal had his counsel raised a sufficiency-of-the-evidence claim. *See Smith*, 528 U.S. at 285.

Hooton's first ground for habeas relief is meritless and should be rejected.

### (ii)    *Failure to Advise Hooton to Withdraw Guilty Plea*

In his second ground for relief, Hooton claims his trial counsel was ineffective for failing to advise him to withdraw his guilty plea because there was insufficient evidence to establish the serious-bodily-injury element of the charge. *See* Dkt No. 12 at 6.

The TCCA's rejection of this claim was not an unreasonable application of *Strickland*. Again, Hooton's guilty plea, stipulation of guilty, and judicial confession were sufficient to support the conviction. *See Broce*, 488 U.S. at 569; *see also Whaley v. Davis*, CIVIL ACTION NO. H-16-2271, 2017 WL 57871, at * 1 (S.D. Tex. Jan. 3, 2017) ("Under federal constitutional law, a voluntary and knowing guilty plea is sufficient evidence, standing alone, to support a conviction."; (citation omitted); *see*

*also Keller*, 125 S.W.3d at 605. Thus, it would have made no sense for his counsel to advise him to revoke the guilty plea based on insufficient evidence. To the extent that Hooton is claiming his guilty plea was not knowing because he was unaware of weaknesses in the State's case, as discussed in more detail below, this argument fails because the TCCA explicitly determined the guilty plea was constitutionally sound, and this finding was reasonable. *See* Dkt. No. 21-1 at 17.

Hooton's second ground for habeas relief is meritless and should be rejected.

### (iii)   *Failure to Request a Directed Verdict*

In his third ground for relief, Hooton claims that his trial counsel was ineffective for not requesting a directed verdict after he entered his open plea of guilty and the State proffered evidence for purposes of sentencing. *See* Dkt. No. 12 at 7. According to Hooton, "[d]uring the plea hearing, notwithstanding [his] guilty plea, the State was still required to introduce evidence into the record showing [his] guilt," but they failed to do that, and his trial counsel was ineffective for not seeking a directed verdict.

The TCCA's rejection of this claim was not an unreasonable application of *Strickland*. Again, Hooton's constitutionally valid guilty plea, judicial confession, and stipulation of guilt were sufficient evidence to support his conviction under both constitutional and state law. Thus, a motion for a directed verdict based on insufficiency of the evidence would have been frivolous, and counsel is not required to make frivolous motions. *See*, *e.g.*, *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Hooton's third ground for habeas relief is meritless and should be rejected.

### (iv)    *Failure to File Recusal Motion*

In his seventh ground for relief, Hooton claims that his trial counsel was ineffective for failing to file a recusal motion against the trial judge. *See* Dkt. No. 12 at 9. The TCCA's rejection of this claim was not an unreasonable application of *Strickland*. As discussed below, the TCCA's determination that the trial judge was impartial and not biased against Hooton is reasonable. And so it was also reasonable for the TCCA to determine that Hooton's trial counsel was not ineffective for failing to file a recusal motion. Such a motion would have been futile accepting the determination that the trial judge was not biased to begin with, and counsel is not required to make futile motions or objections. *See*, *e.g.*, *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (citation omitted).

### (v)    *Cumulative Error*

In his eighth ground for relief, Hooton claims that the cumulative errors of his trial counsel violated his Sixth and Fourteenth Amendment "right to a fair trial by an impartial decision maker." Dkt No. 12 at 9.

"The cumulative error doctrine provides for reversal when an aggregation of non-reversible errors, i.e., plain and harmless errors that do not individually warrant reversal, cumulatively deny a defendant's constitutional right to a fair trial." *United States v. Cervantes*, 706 F.3d 603, 619 (5th Cir. 2013) (citing *United States v. Delgado*, 672 F.3d 320, 343-44 (5th Cir. 2012) (en banc)). The Supreme Court has never

squarely held that the cumulative error doctrine governs IAC claims. *Hill v. Davis*, 781 F. App'x 277 (5th Cir. 2019) (per curiam)

But even if it did, the TCCA's rejection of this claim was not unreasonable because the TCCA determined, again reasonably, that none of Hooton's IAC claims had merit. Thus, there was nothing to "cumulate" and no occasion to apply the cumulative error doctrine. *See, e.g., U.S. v. Eghobor*, 812 F.3d 352, 361 (5th Cir. 2015) ("The defendant's '[a]llegations of non-errors do not play a role in cumulative error analysis since there is nothing to cumulate.'") (quoting *United States v. Cervantes*, 706 F.3d 603, 618 (5th Cir. 2013)).

Hooton's eighth ground for habeas relief is meritless and should be rejected.

## B. Knowing and Voluntary Guilty Plea

In his fourth ground for relief, Hooton claims that his guilty plea was constitutionally defective because his counsel did not inform him of an available affirmative defense: that the act was "emergency medical care administered in good faith and with reasonable care by a person not licensed in the healing arts." Dkt. No. 12 at 6; *see also* TEX. PENAL CODE ANN. § 22.04(b)(1) (listing affirmative defenses). He further claims in his fifth ground for relief that his guilty plea was constitutionally defective because the State "failed to present sufficient proof of every essential element of the indicted charge to support" his guilty plea. Dkt. No. 12 at 8.

A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently. *See James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Whether a plea is knowing turns on whether the defendant had a full understanding

of the consequences of the plea. *United States v. Hernandez*, 234, F.3d 252, 255 (5th Cir. 2000). If a criminal defendant understood the charge against him and the potential punishment for the offense charged – and voluntarily pleaded guilty – then the plea will generally be upheld, unless the defendant can demonstrate that the plea was involuntary. *See James*, 56 F.3d at 666. A plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

Here, the habeas trial court found, in pertinent part, that "defense counsel adequately advised [Hooton] of possible defenses and the consequences of the plea," and that "[Hooton] freely and voluntarily made the decision to enter a plea of guilty." Dkt. No. 21-1 at 1. The TCCA adopted those findings, and ample evidence in the state-court record supports them.

To start, Hooton signed a "Judicial Confession" and other guilty-plea papers that included the "Courts Admonitions to Defendant," and "Defendant's Statements and Waivers." *See* Dkt. No. 21-1 at 9-10. In these documents, Hooton acknowledged his rights and stated that he is mentally competent, understood the nature of the allegations against him, understood the range of punishment, understood the consequences of a guilty plea against him, and understood his pertinent constitutional rights. *See* Dkt. No. 21-1 at 9-10.

"Official documents – such as a written plea agreement – are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'" *United States v. McDaniel*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d

1079, 1081 (5th Cir. 1985)). Indeed, a defendant's sworn in-court representations that his guilty plea is knowing and voluntary "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Therefore, these guilty-plea documents support the knowing and voluntary nature of Hooton's guilty plea.

Further, Hooton testified in open court that his plea was knowing and voluntary:

| | |
|---|---|
| The Court: | Okay. So due to your two enhancement paragraphs, the range of punishment is anywhere from 25 up to 99 years or life. Do you understand, sir, the offense for which you are charged and have been indicted and the range of punishment? |
| Hooton: | Yes, ma'am. |
| The Court: | Do you also understand you have an absolute right to a jury trial? |
| Hooton: | Yes, ma'am. |
| The Court: | The paperwork I have before me indicates that after conferring with your attorney and your attorney negotiating with the assistant district attorney, that you are going to give up your right to a jury trial; is that correct? |
| Hooton: | Yes, ma'am. |
| The Court: | Are you giving up your right to a jury trial freely and voluntarily? |
| Hooton: | Yes, ma'am. |
| The Court: | Has your attorney gone over with you all of the paperwork you signed and did you understand all of that paperwork? |
| Hooton: | Yes, ma'am. |
| .... | |

The Court:    You understand that if you go forward with your plea of guilty to this offense, that not only do I have to honor that 30-year offer, but the whole range of punishment will be open, and that's 25 to 99 years or life. Do you understand that? In other words, I could give you more than the offer?

Hooton:    Oh, okay. Yes, ma'am.

The Court:    So you understand that?

Hooton:    Yes, ma'am.

....

The Court:    Mr. Hooton, do you understand what you've been charged with?

Hooton:    Yes, ma'am.

The Court:    And you have been able to cooperate with your attorney to prepare for this hearing?

Hooton:    Yes, ma'am.

Dkt. No. 18-15 at 8-11. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-74 (1977); *see also DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) ("Although their attestations to voluntariness are not an absolute bar to raising this claim, Appellants face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity."). And a habeas petitioner bears the burden of rebutting this presumption of regularity with clear and convincing evidence. *See Lloyd v. Director, TDJC-CID*, Civil Action No. 5:09-CV-162, 2012 WL 5831122, at *2 (E.D. Tex. Oct. 3, 2012) (citing 28 U.S.C. § 2254(e)(1)). Hooton has failed to do that here, and his in-court declarations evince the knowing and voluntary nature of his plea.

Finally, the TCCA credited the affidavit of Hooton's trial counsel in which she says that she did inform Hooton of all potential defenses – as well as the potential difficulty the State might have in proving the serious-bodily-injury element –prior to him pleading guilty. Dkt. No. 21-1 at 15-17; Dkt. No. 18-20 at 25-26. The TCCA's decision to credit the affidavit is a factual finding that can only be rebutted by clear and convincing evidence. *See*, *e.g.*, 28 U.S.C. § 2254(e)(1); *see also Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010) (factual finding that affidavit of trial counsel – which established basis for strategic decision – was credible was a factual finding that could only be rebutted by clear and convincing evidence to the contrary); citation omitted).

Hooton has not provided clear and convincing evidence to disturb that finding. He seems to suggest that it is inconceivable that he would have forgone a trial had he known of the emergency-medical-care defense. *See* Dkt. No. 24 at 6-7.

But the defense is not as rock-solid as Hooton claims. It is not clear from the record that the fact-finder would have found the defense applicable. Even assuming that what Hooton did to the victim was "medical care," a fact finder might have questioned whether it was done in the context of an emergency, in good faith, and reasonably under the circumstances. *See* TEX. PENAL CODE ANN. § 22.04(b)(1). It is not inconceivable that Hooton would have gone forward with an open guilty plea even though his counsel informed him of this affirmative defense, as the TCCA found was the case.

And, as for Hooton's fifth ground – that there was insufficient evidence to convict him and that this rendered his plea deficient – to the extent that this is a

standalone insufficiency-of-the-evidence claim disguised as an unintelligent guilty plea argument, as discussed below, the claim is procedurally defaulted.

To the extent that Hooton is arguing his guilty plea was unintelligent because he did not know about the elements of the crime, what the State would have to prove, and potential problem areas for the State, the undersigned disagrees. Hooton focuses on the serious-bodily-injury element of the crime. But the TCCA found that Hooton's counsel did explain this element to him, advising that it might be difficult to prove but ultimately would depend on how the jury viewed the evidence. *See* Dkt. No. 18-20 at 25. Hooton has not rebutted that factual finding with clear and convincing evidence.

Because there is ample record evidence supporting the TCCA's determination that Hooton's guilty plea was knowing and voluntary, Hooton's fourth and fifth grounds for habeas relief are meritless and should be rejected.

### C.     Bias of Trial Judge

In his sixth ground for relief, Hooton claims that the trial judge was biased against him and should have been recused. Dkt. No. 12 at 9. He claims that the trial judge denied his right to a fair trial by an impartial tribunal by acting in a dual capacity as a judge and prosecutor and by having "deep seated favoritism for the State." *See id.* Hooton points to the following specific examples of the trial judge's conduct during sentencing as showing bias or partiality: (1) hugging the State's primary witness, the victim; (2) introducing evidence during sentencing; (3) conducting a direct examination of a witness; (4) advising the State that there was

no need for additional witnesses and encouraging the State to pass a witness; and (5) preventing the defense from re-cross examining a witness. *See id.*

"Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (citing *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997)). However, "most qualifications concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Id.* at 904. "A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has interest in the outcome of the case." *Buntion*, 524 F.3d at 672 (citing *Gracy*, 520 U.S. at 905). "A likelihood or appearance of bias can disqualify a judge as well." *Id.* (citing *Taylor v. Hayes*, 418 U.S. 488, 501 (1974)). "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) (citations omitted).

"Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has 'acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting "cannot be defined with precision."'" *Buntion*, 524 F.3d at 672 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986); quoting, in turn, *In re Murchison*, 349 U.S. 133, 136 (1955)); *see also Ryan v. Clarke*, 387 F.3d 785, 793-94 (8th Cir. 2004) ("Application of this vague standard, when viewed through the deferential lens of *Williams v. Taylor* and the AEDPA, necessarily leaves

state courts considerable latitude to pronounce ruling that do not contradict, and are reasonable applications of, [relevant Supreme Court precedent]").

"Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias." *Buntion*, F.3d at 672 (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) ("[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."); *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005) (evaluating a judicial bias claim and noting that because there was no presumption of bias from the defendant's attack on the judge, it was necessary to "examine the record for indications of actual bias on the part of the trial judge") (emphasis added)).

Opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism. *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Judges do not have to be naïve; the evidence at trial may reveal the defendant to be a 'thoroughly reprehensible person.'" *Buntion*, 524 F.3d at 673. (citing *Liteky*, 510 U.S. at 550-51). Further, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not rise to the level of judicial bias. *Liteky*, 510 U.S. at 555-56. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* (citing *United States v. Grinnell Corp.*, 384 U.S. at 563, 583 (1966)).

As for presumptive bias, there are three situations in which the Supreme Court has found it:

> The decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; an adjudicator has been the target of personal abuse or criticism from the party before him; and a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

*Bigby*, 402 F.3d at 559 (citing Supreme Court cases) (citation modified to omit numbering).

Here, the habeas trial court, in findings adopted by the TCCA, found that "the trial court did not act without impartiality." Dkt. No 21-1 at 18-19. Hooton is tasked with showing that that determination is not only incorrect, but unreasonable. *See, e.g., Garcia v. Director, TDCJ-CID*, 73 F.Supp.3d 693, 710 (E.D. Tex. 2014) ("Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that a state court decision was unreasonable.") (citing *Bell*, 535 U.S. at 693).

As for presumptive bias, this case does not fit into the three situations in which the Supreme Court previously found it: there is no indication that the trial judge had a direct, personal, substantial, and pecuniary interest in the outcome of the case; there is no indication that the trial judge had been the target of personal abuse or criticism from Hooton; and this was not a situation in which the trial judge had the dual role of investigating and adjudicating disputes and complaints. So, for Hooton to show a due process violation and obtain habeas relief, "he must show that state court unreasonably determined that [the trial court] was not actually biased in his case based on clearly established Supreme Court law." *Buntion*, 524 F.3d at 673.

Hooton fails to make that showing. The undersigned has located no authority from the Supreme Court finding actual bias under similar circumstances to this case, so the TCCA's rejection of this claim was not contrary to clearly established federal law. Nor was it an unreasonable application of clearly established federal law. None of the circumstances that Hooton contends show actual bias necessarily do under clearly established Supreme Court precedent, especially when viewed through the pertinent factual findings of the habeas trial court that the TCCA adopted.

Hooton claims that the trial judge was biased because she hugged the complaining witness/victim during his testimony. While this behavior may or may not be inconsistent with appropriate judicial temperament, the Court is not reviewing the claim *de novo*. The TCCA adopted the habeas trial court's finding that "the witness that was hugged was a child in kindergarten who was scared and nervous about being in a courtroom." Dkt. No. 21-1 at 18. Given that factual finding, the trial judge's action in comforting this witness did not necessarily show the kind of favoritism or antagonism necessary to sustain a finding of actual prejudice. Rather than a manifestation of favoritism or antagonism, the trial judge's conduct could be seen as a neutral attempt to ensure a witness was comfortable presenting truthful testimony that could benefit or hurt Hooton for sentencing purposes.

Hooton next claims that the trial judge "introduced" evidence against him. Dkt. No. 12 at 9. On this point, the habeas trial court noted that "the presentation of evidence was designed to assist the court in determining the appropriate sentence." Dkt. No. 21-1 at 18-19. The transcript does not reveal any instances of the trial judge

"introducing" evidence on behalf of the State. *See generally* Dkt. No. 18-15. There are several instances of the trial judge asking witnesses questions about exhibits, but Texas law allows such questioning to clarify a point or to obtain a clearer understanding, so long as the judge does not become "an advocate in the adversarial process and los[e] the neutral and detached role required for the fact finder and the judge." *Moreno v. State*, 800 S.W.2d 357, 359 (Tex. App. – Texarkana 1995, no pet.); *see also Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978); *Marshall v. State*, 297 S.W.2d 135, 136-37 (Tex. Crim. App. 1956). Upon review of the transcript, there is nothing about the way the trial judge questioned witnesses that indicates favoritism or antagonism towards Hooton; rather, the questioning was for information-gathering purposes relevant to sentencing.

Hooton claims that the trial judge conducted a direct examination of the primary witness for the State. *See* Dkt. No. 12 at 9. Hooton is referencing the examination of the victim, who was five years old at the time he was called as a witness. *See* Dkt. No. 18-15 at 72-75. The trial judge asked him about his experience in the hospital, his experience living with his aunt (who took him in after the acts underlying the criminal proceedings against Hooton), his experience when he did not live with his aunt and whether he was scared, and whether "anyone" ever hit him when he did not live with his aunt. *Id.* It is apparent that the trial judge's questioning was designed to obtain information relevant to sentencing pursuant to Article 37.07 of the Texas Code of Criminal Procedure, under which evidence of other bad acts (if proven beyond a reasonable doubt to have been committed by the defendant or for

28

which he could be criminally responsible) and the circumstances of the crime can be relevant; at the least, the questioning does not reveal any antagonism or favoritism and does not show that the trial judge was biased. *See id.*

Hooton also claims that the trial judge was biased because she "advised the State that there was no need to produce additional evidence from various witnesses, and in one instance encouraged the State to pass the witness." Dkt. No. 12 at 9. The habeas trial court found that "[t]he presentation of evidence was designed to assist the court in determining the appropriate sentence." Dkt. No. 21-1 at 18-19. Hooton has not pointed to clear and convincing evidence to contradict that finding. *See* 28 U.S.C. § 2254(e)(1). Considering that, the manner in which the trial judge decided that evidence would be presented for purposes of sentencing is not demonstrative of judicial bias. *See*, *e.g.*, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 445 F.Supp.3d 535, (N.D. Cal. 2020) (noting that the trial court may properly "control[] the orderly presentation of the evidence" including by "preventing undue repetition of testimony") (citation omitted); *Harrison v. Anderson*, 300 F.Supp.2d 690, 713 (S.D. Ind. 2000) (rejecting claim of judicial bias that was premised on matters "wholly within the proper management of the proceedings").

Hooton finally claims that the trial judge was biased because she prevented the defense from "re-cross examining a critical state witness." Dkt. No. 12 at 9. Hooton claims that the trial judge refused to allow a re-cross of the victim's aunt. See Dkt. No. 18-15 at 48. But the trial court did not prevent a re-cross of that witness, so

the premise for this portion of Hooton's judicial bias claim is flawed. *See id.* at 67. Even if the trial judge did impose limits on cross-examination, this was a matter related to the proper management of the proceedings, and not necessarily indicative of bias. *See, e.g., United States v. Raymond*, 697 F.3d 32, 40 (1st Cir. 2012) (noting that a trial court possesses a considerable margin of discretion to impose reasonable limits on cross examination).

The TCCA's rejection of Hooton's claim that the trial judge's impartiality warranted recusal was not contrary to clearly established federal law, was not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Hooton's sixth ground for habeas relief is meritless and should be rejected.

### D. Sufficiency-of-the-Evidence Claim

The State argues that to the extent the Court understands Hooton's fifth ground for relief – that his guilty plea was involuntary due to a lack of sufficient evidence to convict him – as a standalone challenge to the sufficiency of the evidence, it is procedurally defaulted. Dkt. No. 21 at 11. The undersigned agrees.

It is well-settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state law that is "both independent of the merits of the federal claim and adequate to support that judgment." *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260 262 (1998)); *see also Coleman v. Thompson,*

501 U.S. 722, 729 (1991). Where a state court has explicitly relied on a procedural bar, a petitioner may not obtain federal habeas corpus relief absent a showing of cause for the default and actual prejudice that is attributable to the default, or that the federal court's failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. "Cause is defined as 'something external to the petitioner, something that cannot fairly be attributed to him' that impedes his efforts to comply with the [state] procedural rule." *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996) (citing *Coleman*, 501 U.S. at 753). "If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice." *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004) (citing *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997)). To establish a fundamental miscarriage of justice, a petitioner must provide evidence that would support a "colorable showing of factual innocence." *Kuhlman v. Wilson*, 477 U.S. 436, 454 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, the habeas trial court, in a finding adopted by the TCCA, found that Hooton's claim – which he did not raise on direct appeal or in his PDR (Dkt. No. 18-7; Dkt. No. 18-11) – that his guilty plea was invalid because there was insufficient evidence to support his conviction was "really a sufficiency of the evidence claim and

not cognizable on habeas review." Dkt. No. 21-1 at 17. (citing *Ex parte Easter*, 615 S.W.2d 719 (Tex. Crim. App. 1991).

This result is well-established under Texas law: an insufficiency-of-the-evidence claim must be presented on direct appeal – not in state collateral proceedings. *See, e.g, Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte McWilliams*, 634 S.W.2d 815, 818 (Tex. Crim. App. 1982); *Ex parte Easter*, 615 S.W.2d at 721; *Ex parte Smith*, 571 S.W.2d 22, 23 (Tex. Crim. App.1978). And the Fifth Circuit has long held that the failure to abide by this state rule will result in a procedural default of the claim in federal court. *See, e.g., Rose v. Johnson*, 141 F.Supp.2d 661, 700 (S.D. Tex. 2001); *see also Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (finding insufficiency-of-evidence claim procedurally barred when the petitioner only raised the claim in state habeas proceedings and not on direct appeal).

Hooton argues that there is cause to excuse the procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012), which was made applicable to Texas habeas petitioners in *Trevino v. Thaler*, 569 U.S. 413 (2013). *See* Dkt. No. 24 at 8. To establish cause under *Martinez*, Hooton must show that "(1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law *requires* that an 'ineffective assistance of trial counsel [claim]…be raised in an initial-review collateral proceeding.'" *Trevino*, 569 U.S. at 422 (citing *Martinez*, 566 U.S. at 13-15).

32

But the *Martinez* exception does not apply to claims outside of the IAC context. *See Prytash v. Davis*, 854 F.3d 830, 836 (5th Cir. 2017) (explaining the rationale of *Martinez* and concluding it does not apply to *Batson* claims "[b]ecause the reasoning underlying *Martinez/Trevino* does not extend to claims that can generally be brought on direct appeal and Prytash cites no caselaw at any level adopting such an extension, the district court's rejection of *Martinez/Trevino* as cause for the defaulted *Batson* claims is not debatable") (citing *Hunter v. Sinclair*, 732 F.3d 1124, 1127 (9th Cir. 2013), *cert. denied*,---U.S.---, 134 S. Ct. 1771 (2014) (refusing to apply *Martinez* to allow ineffective assistance of state habeas counsel to excuse default of *Brady* claim). Further, *Martinez* dealt with ineffectiveness of counsel in collateral proceedings. But here, Hooton seems to be arguing that his appellate counsel was ineffective.

It is true that "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But for that to work, "the assistance must have been so ineffective as to violate the Federal Constitution." *Id.* (citation omitted). For the reasons discussed above, though, Hooton has failed to show that his appellate counsel was ineffective for failing to raise a sufficiency-of-the-evidence claim.

Because Hooton failed to present the sufficiency-of-the-evidence claim on direct appeal, and because he does not show cause or prejudice for that failure here, if he is bringing a standalone sufficiency-of-the-evidence claim, it is procedurally defaulted and should be rejected accordingly.

**Recommendation**

The Court should deny Hooton's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: August 17, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

34